UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| DONNA VAN HORN, | * | Civil Action No. _____ |
| Plaintiff | * | |
| | * | |
| v. | * | |
| | * | |
| CARDIOVASCULAR CONSULTANTS | * | |
| OF MAINE, P.A. | * | |
| Defendant | * | *JURY TRIAL DEMANDED* |

## PLAINTIFF'S ORIGINAL COMPLAINT

1.  This action is brought under Title I of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. ("ADA") and under the Maine Human Rights Act ("MHRA"), 5 M.R.S.A. § 4551 et seq.

### Jurisdiction

2.  Jurisdiction is proper under 28 U.S.C. § 1331 in that Plaintiff's claims involve federal questions arising under the ADA.

3.  This court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

### Venue

4.  Venue is proper with this Court pursuant to 28 U.S.C. 1391(b)(1) because Defendant's principal place of business is Scarborough, Maine and pursuant to 28 U.S.C. 1391(b)(2) because Plaintiff's claims arose out of "events and omissions" a substantial part of which occurred in this District.

## Parties

5.  Plaintiff Donna Van Horn ("Van Horn") is a 37-year-old resident of South
    Portland, Maine.  At all relevant times, Van Horn met the definition of
    "employee" and a "qualified individual with a disability" under the ADA, 42
    U.S.C. §§ 12102 and 12111(8), the Americans with Disabilities Act Amendments
    of 2008 and the Maine Human Rights Act, 5 MRSA § 4553-A.

6.  Defendant Cardiovascular Consultants of Maine, P.A. ("Defendant") is a
    company incorporated under the laws of Maine, and having its principal place of
    business in Scarborough, Maine.  At all material times, Defendant was a "covered
    entity" within the meaning of the MHRA, 5 M.R.S.A. §4553(1-B), and the ADA,
    42 U.S.C. § 12111(2).  At all material times, Defendant was an "employer" within
    the meaning of the MHRA, 5 M.R.S.A. § 4553(4) and the ADA, 42 U.S.C. §
    12111(5)(A), in that it is engaged in industry affecting commerce, and at all
    relevant times employed more than 150 persons.  Defendant may be served with
    process by serving their registered agent for service of process, Thomas J. Van
    Meer, Esq.

## Jury Trial Demand

7.  Plaintiff requests trial by jury on all issues so triable, and tenders the jury fee.

## Facts

8.  Donna Van Horn was born with a heart condition.  At two months of age, she was
    diagnosed with congenital heart disease.  At the age of two, she had her first open
    heart surgery.

9.  Due to her heart disease, Van Horn has had treatments and surgeries over the course of her life.  Today, she must take multiple medications to control her heart condition, and failure to take the medications could have grave, potentially fatal consequences for her.

10. In order to treat and evaluate her congenital heart disease, Van Horn has had to endure multiple cardiac catheterizations over the years, including through her right femoral artery, a large artery in the muscles of the thigh.

11. As a result of difficult catheterizations and treatments, Van Horn has developed huge, painful, chronic, venous varicosities from her groin area to her knee.  Her venous varicosities in her right femoral artery are a consequence of her multiple cardiac catheterizations for her heart disease.

12. By June 2007, Van Horn's right greater saphenous vein had developed chronic varicosities in her right thigh that caused aching, fatigability, sweating, restless leg syndrome, and severe pain.

13. Van Horn's heart disease substantially limits a number of her major life activities, including sexual activity and reproduction, running, and breathing.  Her doctors have advised her that pregnancy would be too stressful on her heart, so she is not able to have children.  She cannot run, and she uses an oxygen tank to breath.

14. Van Horn is substantially limited in the operation of major bodily functions, including, but not limited to, cardiovascular bodily functions and reproductive bodily functions.

15. Van Horn has a record of impairment including, but not limited to, heart disease and chronic varicosities and Defendant regarded her as having heart disease and chronic varicosities.

16. Van Horn's heart disease is a per se disability under the MHRA.

17. Van Horn's heart disease and chronic varicose veins each significantly impair her physical health and have duration of more than six months.

18. Van Horn's heart disease and chronic varicose veins impair her health to a significant extent as compared to what is ordinarily experienced in the general population.

19. Van Horn has a record of disability, chronic varicose veins and heart disease, and Defendant perceived her as having a disability that substantially limited major life activities including, but not limited to, lifting, working, and operation of cardiovascular functions.

20. Despite her disabilities, until recently Van Horn has worked full time in the medical field since 1991. Given her own struggles with heart disease and chronic varicose veins, she has had an interest in helping others with cardiac issues.

21. On or about April 25, 2007, Van Horn interviewed for a scheduler position with Defendant. Defendant did not believe Van Horn would be a good fit for the scheduler position and did not select her for this position. Defendant decided that Van Horn may be a good fit for a Medical Assistant position.

22. Thereafter, on or about the end of April 2007 or May 2007, Van Horn interviewed with Karen Ouellette and Jennifer Lohnes for a Medical Assistant position at

Defendant's offices.  At that time, Van Horn also job shadowed the head Medical

Assistant, Jennifer Lohnes.

23. During the course of her interviews, Van Horn disclosed that she has heart

disease.  Ouellette and Lohnes commented on Van Horn's scar from open-heart

surgery.

24. Also during her interviews, Van Horn told Ouellette and Lohnes that she has

chronic varicose veins that were related to her treatment for heart disease and that,

in the event that she was hired, she would need time off to undergo a phlebectomy

at Maine Heart Surgical Associates in June.

25. Defendant hired Van Horn, who began work as a medical assistant on or about

May 28, 2007.

26. Van Horn's essential job functions as a medical assistant included triaging

patients, varicose screening, reviewing HIPAA rights with patients, filing, pulling

and updating charts, calling in prescriptions, filling out lipid sheets, computer

work and paperwork.

27. Van Horn was able to perform the essential functions of her job without or with

reasonable accommodation, including a reasonable, modified schedule after

undergoing a phlebectomy to correct her chronic varicose vein.

28. Van Horn was skilled, knowledgeable and could do the job well.

29. Prior to starting work on May 28, 2007, Van Horn received approval from

Defendant to have time off for her phlebectomy for her chronic varicose vein.

30. Following Van Horn's disclosure of her heart disease and need for surgery for a

related chronic varicose vein, Van Horn's supervisor, Ouellette, went to managers

Lisa Langburd and Kristina Lawhead and expressed concern that Van Horn may not be capable of doing her job due to her heart condition.  Ouellette expressed specific concerns that Van Horn may not be able to lift, work, or maintain her cardiovascular health.  Ouellette also told them that Van Horn needed to be out for surgery and expressed concern that she was not well enough to do the job.

31. Van Horn underwent a right thigh phlebectomy at Maine Heart Surgical Associates on Friday, June 15, 2007.  Following the surgery, she had complications that necessitated a longer stay recovery period.

32. After her surgery, Van Horn repeatedly attempted to call her supervisor, Ouellette, to alert her that she was not able to come in as soon as expected. Unbeknownst to Van Horn, Defendant had terminated Ouellette on or about Tuesday, June 19, 2007.

33. After failing to reach Ouellette, Van Horn called the head medical assistant, Lohnes, who informed Van Horn that Ouellette had been terminated.  Lohnes transferred Van Horn to Kristina Lawhead, Defendant's Clinical Director.  Van Horn told Lawhead that she would need some additional time off to recovery from the surgery.

34. Thereafter, Van Horn and Kathy Mercier, a nurse at Maine Heart Surgical Associates, contacted Defendant to advise of Van Horn's health status and estimated return time.

35. Van Horn called Defendant on June 28, 2007 to inform them that her physician had cleared her to return to work on June 29, 2007.

36. On June 28, 2007, Kathy Mercier faxed a letter to Terri Drouin, Defendant's Human Resources Director, outlining Van Horn's restrictions on a Maine Heart Surgical Associates "Patient Disability Information Form."   The restrictions included 2 hours of work on Friday, June 29, Monday, July 2 and Tuesday, July 3; 4 hours of work on Thursday, July 5 and Friday, July 6; no lifting over 10 pounds and a return to work at full capacity on July 9, 2007.

37. On June 28, 2007, Defendant's CEO April Donovan and Clinical Director Lawhead called Van Horn at home from their speakerphone.  Donovan informed Van Horn that she would not be accommodated and that she was terminated from employment.  Donovan said she reviewed the restrictions faxed by Maine Heart Surgical Associates and they were unable to accommodate them.  Donovan said they needed someone "100 percent."   Donovan said that she spoke with an attorney and that Van Horn was not being terminated for negative reasons but because she had not been there long they have the right to let her go.

38. Donovan told Van Horn she could pick up her personal belongings at the front desk and that she could not go in the back to say goodbye to coworkers.

39. Since Van Horn was terminated, Defendant has offered shifting, conflicting reasons for Van Horn's termination, including:

      i.  Van Horn was terminated for a prolonged absence;

     ii.  Van Horn was terminated because she did not properly communicate with them during her time out for surgery;

   iii.  Van Horn was terminated because she elected not to return to work the day she was cleared to work;

     iv.  Van Horn was terminated because Defendant could not accommodate her work restrictions;

     v.  Van Horn was terminated due to Van Horn's restrictions and inability to perform the essential functions of the job;

     vi.  Van Horn was terminated because she was not a good fit and was not knowledgeable to the extent Defendant believed;

     vii.  Van Horn was terminated because she was a "no call no show";

     viii.  Van Horn could not come back full time and was too medically restricted to come back to work at all, therefore management would start looking for a new person to hire as a medical assistant.

40. Van Horn's insurance coverage under Defendant was scheduled to start the day after she was terminated, but since she was fired, her lack of insurance coverage was imminent.   Van Horn suffered great stress from her financial situation, her health situation and her imminent lack of insurance coverage.

41. As a result of Defendant's unlawful discrimination against Plaintiff, she has suffered lost wages, lost benefits, loss of enjoyment of life, loss of self-esteem, injury to reputation, injury to career, emotional distress, pain and suffering, inconvenience, and other pecuniary and non-pecuniary losses.

42. Defendant has unlawfully discriminated against Plaintiff with malice or with reckless indifference to her protected rights under state and federal law.

43. Van Horn has no plain, adequate, or complete remedy at law to fully redress the wrongs alleged, and she will continue to suffer irreparable injury from this treatment by Defendant unless Defendant is enjoined by this court.

44. Van Horn has met all conditions and requirements precedent to this lawsuit. Plaintiff timely filed a Charge of Discrimination with the Equal Opportunity Commission ("EEOC") and the Maine Human Rights Commission ("MHRC") on or about December 4, 2007.  On May 18, 2009, the Maine Human Rights Commission found reasonable grounds to believe discrimination occurred.   See attached exhibit 1.

45. On June 10, 2009, Plaintiff received a Failure to Conciliate (Corrected Letter) from the MHRC, dated June 5, 2009, which directs this matter to the Disability Rights Center for litigation.  See attached exhibit 2.

46. On June 12, 2009, Plaintiff received a Notice of Right to Sue from the EEOC dated June 9, 2009.  See attached exhibit 3.   This suit is filed within 60 days of receiving the Notice from the MHRC, and within 90 days of receiving the Notice from the EEOC.

### Causes of Action

### Count I: Violations of the Americans with Disabilities Act

47. Van Horn repeats and realleges each and every allegation of Paragraphs 1 through 46.

48. The ADA defines discrimination as not making reasonable accommodations to an otherwise qualified individual with a disability.  42 U.S.C. 12112(b)(5)(A);  29 C.F.R. 1630.9.

49. Defendant's refusal to make reasonable accommodations for Van Horn's known disability constitutes discrimination against Van Horn due to her disability in violation of ADA 102(b)(5)(A), 42 USC 12,112(b)(5)(A).

50. Under the ADA, an employer must engage in an interactive process to identify potential accommodates that could overcome the employee's limitations.   29 C.F.R. 1630.2(o)(3) (2005).  Defendant did not assist Van Horn in seeking reasonable accommodations and Van Horn could have been reasonably accommodated but for Defendant's lack of good faith.

51. The ADA prohibits discrimination by an employer against a qualified individual with a disability in the terms, conditions, and privileges of employment, including discriminatory discharge.  42 U.S.C. 12112(a); 29 C.F.R. 1630.4 .

52. Defendant's termination of Van Horn constitutes discrimination against Van Horn due to her disability, perceived disability and/or record of disability in violation of 42 U.S.C. 12112(a); 29 C.F.R. 1630.4.

## Count II: Violation of the Maine Human Rights Act

53. Van Horn repeats and realleges each and every allegation of Paragraphs 1 through 46.

54. Pursuant to the MHRA, unlawful discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless the covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the covered entity."  5 M.R.S.A. 4553(2)(E), 4572(2).

55. Defendant's refusal to make reasonable accommodation for Van Horn's known physical limitations constitutes discrimination against Van Horn due to her disability in violation of 5 M.R.S.A. 4553(2)(E), 4572(2).

56. The MHRA prohibits discrimination by an employer against a qualified individual with a disability in the terms, conditions, and privileges of employment, including discriminatory discharge on the basis of disability, perceived disability and record of disability.  5 M.R.S.A. 4572(1)(A).

57. Defendant's termination of Van Horn constitutes discrimination against Van Horn due to her actual disability, and/or her perceived disability and/or her record of disability in violation of   5 M.R.S.A. 4572(1)(A).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Donna Van Horn requests that the Defendant be cited to appear and answer, and that on hearing, the Court grant the following relief:

(a) Enter Judgment in her favor;

(b) Declare the conduct engaged in by Defendant to be in violation of Plaintiff's rights;

(c) Enjoin Defendant, its agents, successors, employees, and those acting in concert with Defendant from continuing to violate the rights of Plaintiff;

(d) Award Plaintiff equitable relief for back pay, benefits and prejudgment interest;

(e) Award Plaintiff compensatory damages in an amount to be determined at trial of this matter;

(f) Award Plaintiff punitive damages in an amount to be determined at trial of this matter;

(g) Award Plaintiff nominal damages;

(h) Award Plaintiff civil penal damages pursuant to the MHRA;

(i) Award Plaintiff attorney's fees, including legal expenses, and costs;

(j) Award Plaintiff prejudgment interest; and

(k) Grant to Plaintiff such other and further relief as may be just and proper.


Dated:  June 24, 2009

/s/ Kristin Aiello

_____

Kristin Aiello
kaiello@drcme.org

/s/ Sean Ociepka

_____

Sean Ociepka
sociepka@drcme.org

Disability Rights Center
24 Stone Street
P.O. Box 2007
Augusta, Maine 04338
(207) 626-2774